John L. Smaha, Esq., Bar No. 95855
Gustavo E. Bravo, Esq. Bar No. 218752
**SMAHA LAW GROUP**
2398 San Diego Avenue
San Diego, California 92110
Telephone:  (619) 688-1557
Facsimile:  (619) 688-1558

Proposed Attorneys for Debtor, Apmetrix, Inc.

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>APMETRIX, INC.<br><br>Debtor. | CASE NO. 16-07584-LT11<br><br>Chapter 11<br><br>*EMERGENCY/FIRST DAY MOTION* BY DEBTOR FOR AN ORDER DIRECTING CUSTODIAN(S) TO TURNOVER DEBTOR'S FUNDS<br><br>DATE:     Ex Parte<br>TIME:     Ex Parte<br>JUDGE:   Hon. Laura S. Taylor<br>DEPT.:    Three |

**PLEASE NOTE THAT THIS IS A FIRST-DAY MOTION FILED PURSUANT TO APPENDIX D1 OF THE LOCAL BANKRUPTCY RULES OF THE SOUTHERN DISTRICT OF CALIFORNIA ("LOCAL BANKRUPTCY RULES"), ANY PARTY IN INTEREST WHO OPPOSES THE FIRST-DAY MOTION MUST IMMEDIATELY NOTIFY THE JUDGE'S LAW CLERK, OLE OLESON, BY CALLING 619-557-6750. NO WRITTEN OPPOSITION SHALL BE FILED TO THE FIRST-DAY MOTION UNLESS THE COURT OTHERWISE DIRECTS.**

The application of Debtor, Apmetrix, Inc., the Debtor-In-Possession in the above referenced bankruptcy ("Debtor") hereby applies for an order directing certain custodians of funds to turnover funds that are a part of the Debtor's estate pursuant to the United States Bankruptcy Code 11 U.S.C. § 543 as follows:

///

A. Directing Silicon Valley Bank and the Santa Clara County Sheriff, as custodians, to turnover any and all funds of the Debtor that these entities hold under 11 U.S.C. § 543

B. Such additional relief as the Court deems just and proper.

As grounds therefore, Debtor states the following:

## I.

## THE NEED AND BASIS FOR EMERGENCY RELIEF

Debtor provides a mission critical data management platform delivering multi-channel analytics for entertainment companies. Debtor's mobile, gaming, and digital media solutions allow companies to automate their entire data collection and reporting process across all departments. By doing so, Debtor helps eliminate costly manual errors and significantly increases operational efficiency by enabling decisions made with insight-based facts. The Debtor's services save companies thousands of dollars each month by automating the entire data collection, aggregation, and visualization process all within one platform. Debtor's technology blends live streaming data as well as virtually any other external data in one place so you can easily see complex correlations and bring context to your content. With the Debtor's platform, Debtor's clients enjoy significant operational improvements and save countless hours of manual reporting time. Offering services to companies in the gaming, virtual reality, mobile and digital media industries, the Debtor is poised to provide valuable services to established and emerging tech companies. (See Declaration of Gilles Godard, ¶ 2).

On or about August 22, 2016, Ensighten, Inc., ("Ensighten") brought a Verified Complaint for Breach of Contract, Goods and Services Rendered, Unfair Competition; and, Preliminary and Permanent Injunction against the Debtor in the Superior Court of California in and for the County of San Diego, Central Division entitled *Ensighten, Inc. v. Apmetrix, Inc.* Case No. 37-2016-00029028 (the "Ensighten Complaint") (See Notice of Lodgment of Exhibits ("NOL"), Exhibit A, a true and correct copy of the Ensighten Complaint) . The Ensighten Complaint alleges that Ensighten obtained the assets of an entity known as

Anametrix, Inc. Among the assets of Anametrix is an alleged agreement entitled "Anametrix Amended Software License Agreement," dated August 26, 2014 (the "License Agreement") by and between Anametrix and the Debtor. The Ensighten Complaint alleges that the Debtor breached the License Agreement and owes Ensighten at least $478,000 in damages.

On or about September 9, 2016, Ensighten sought a right to attach order and an order for a writ of attachment on an ex parte basis (See NOL, Exhibit B, the Ex Parte Application). The Superior Court initially denied the ex parte application, but set the matter for hearing on October 7, 2016 (See NOL, Exhibit C, the September 13, 2016 Minute Order). At the October 7, 2016, the Superior Court took the matter under submission, but eventually issued a Right to Attach Order and Order for Issuance Writ of Attachment After Hearing on October 13, 2016 (the "Attachment Order") (See NOL, Exhibit D, the Right to Attach Order). On or about October 18, 2016, the Debtor appealed the Attachment Order to the Court of Appeal for State of California, 4th Appellate District, Division 1 (the "Appeals Court") and the appeal was pending before the Appeals Court as *Ensighten, Inc. v. Apmetrix, Inc.*, Case No. D071306 (the "Appeal") (See NOL Exhibit E, The Notice of Appeal). The Debtor filed its Answer to the Ensighten Complaint (the "Answer") on November 2, 2016 (See NOL, Exhibit F, the Answer) along with a Cross-Complaint for Breach of Contract, Breach of Oral Contract, Breach of Covenant of Good Faith and Fair Dealing, Fraud, Negligent Misrepresentation, Quantum Meruit, Violations of Business and Professions Code Section 17200 et seq., and Declaratory Relief (the "Cross-Complaint") (See NOL, Exhibit G, the Cross-Complaint).

On or about October 24, 2016, a notice of attachment was served on Silicon Valley Bank, where the Debtor maintained its bank account by the Santa Clara County Sheriff. The Debtor's deposit account, ending in -6601, was debited that same day in the amount of $335,022.51. (See Declaration of Gilles Godard, Exhibit 1, October 24, 2016 letter from Silicon Valley Bank). Thereafter, the Debtor and Ensighten were in constant contact regarding the potential resolution of the Ensighten Complaint and the Cross-Complaint. Unfortunately, despite these ongoing discussions, Ensighten submitted the same notice of

attachment a second time and, on December 12, 2016, the Debtor's bank account was debited again, this time for the amount of $55,244.24 plus a $100 legal process fee (See Declaration of Gilles Godard, Exhibit 2, December 12, 2016 letter from Silicon Valley Bank). With the taking of these funds, the Debtor was unable to cover its ongoing expenses and its ability to operate was placed at extreme risk. The Debtor could not risk having its assets seized again and the decision was made to file for bankruptcy protection. (See Declaration of Gilles Godard, ¶ 3).

On December 15, 2016, the Petition Date, the Debtor filed for bankruptcy protection. That same day the Debtor provided requests to both Silicon Valley Bank and the Santa Clara County Sheriff for the turnover of the funds in accordance with both California Law (California Code of Civil Procedure Section 493.040) and the Bankruptcy Code (11 U.S.C. Section 543) (See Exhibits 1 and 2 to the Declaration of Gustavo E. Bravo). The Debtor was informed by the Santa Clara County Sheriff (the "Sheriff") that it would not release the $335,022.51 the Sheriff is holding without an order from the Bankruptcy Court directing it to do so. Likewise, Silicon Valley Bank has indicated that it will not take any action on the request until it has been instructed by the Sheriff on how to proceed. (See Declaration of Gustavo E. Bravo, ¶ 2).

Due to the attachment of what is now over $380,000 in funds from Debtor's bank account, the Debtor has no funds with which to pay its ongoing obligations. As of the Petition Date, the Debtor had no funds in its Silicon Valley Bank account and had a total of $190.00 in a Chase Bank account. The attachment on December 12, 2016 caused six checks to bounce, including four checks to employees, one check for employee's health insurance benefits and one check for the Debtor's landlord for the Debtor's offices. Without the recovery of the attached funds, the Debtor will be unable to reissue checks on these outstanding claims, will be unable to cover upcoming salary obligations scheduled to be paid on December 16, 2016 and will otherwise be unable to cover other expenses that are to be paid in the ordinary course of business. The Debtor is filing, separately first day motions for leave to reissue the employee checks and the health insurance premium. (See Declaration

of Gilles Godard, ¶ 4).

The Court has jurisdiction over this matter under 18 U.S.C. §§157 and 1334. This is a core proceedings pursuant to 28 U.S.C. § 157. The statutory basis for relief requested in this motion is Bankruptcy Code §105(a) and Appendix D1 of the Local Bankruptcy Rules.

## II.

## THE DEBTOR IS ENTITLED TO THE IMMEDIATE TURNOVER OF ESTATE ASSETS

Under California Code of Civil Procedure (CCP) § 493.030(b), "[the] filing of a petition commencing a voluntary or involuntary case under Title 11 of the United State Code (Bankruptcy) terminates a lien of a temporary protective order or of attachment if the lien was created within 90 days prior to the filing of the petition" In the instant matter, the attachment lien, if any, was created with the Attachment Order dated October 13, 2016. The Petition Date was 64 days after the Attachment Order was entered, fulfilling the requirements of Section 493.030(b). The filing of the Debtor's Bankruptcy Petition has, under California Law, terminated any lien upon the Debtor's funds.

Under CCP § 493.040(a), "[where] a lien of attachment terminates pursuant to Section 493.030, the assignee under a general assignment for the benefit of creditors or, in the case of a bankruptcy, the trustee, interim trustee, or the debtor in possession if there is not trustee or interim trustee, may secure the release of the attached property by filing with the levying officer a request for release of attachment stating the grounds for release and describing the property to be released, executed under oath, together with a copy thereof." Further, Section 493.040(c) provides that, "[in] the case of a trustee, interim trustee, or debtor in possession, the request shall include a certified copy of the petition in bankruptcy, together with a copy thereof."

In the instant matter, the Debtor complied with these requirements by filing with the Sheriff a request for release of the attached property with the grounds for release, i.e., CCP Section 493.030(b), and specifically describing the property to be released, i.e., the $390,266.75 ($355,022.51 attached on October 24, 2016 and $55,244.24 attached on

December 12, 2016). The request included a certified copy of the petition in bankruptcy and a copy as well. (See Declaration of Gustavo E. Bravo and exhibits thereto).

Under 11 U.S.C. § 543(b)(1) "[a] custodian shall deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents or profits of such property, that is in such custodian's possession, custody or control on the date that such custodian acquires knowledge of the commencement of the case". As provided above, the Debtor has notified both the Sheriff and Silicon Valley Bank regarding the filing of the Debtor's bankruptcy. As further provided above, the Sheriff and Silicon Valley have provided their refusal to comply with CCP § 493.040(a) and 11 U.S.C. § 543(b)(1) absent a court order.

It should be noted that none of the above code sections, in either California law or the Bankruptcy Code, require a noticed motion, a hearing or a court order for the turnover of the Debtor's funds. The Debtor is not aware of any basis upon which a creditor, the Sheriff or Silicon Valley Bank could claim that the funds are not part of the Debtor's estate and that they should not be turned over to the Debtor. Indeed, California Law provides that any lien that Ensighten may have obtained as a result of its Attachment Order was terminated automatically by the filing of the Debtor's bankruptcy. Nevertheless, both the Sheriff and Silicon Valley Bank have requested clarification from this Court on whether or not they must turnover the Debtor's funds. As provided above, the Debtor is not able to cover its ongoing operational expenses, over the short term, without the release of the Debtor's funds held by the Sheriff and Silicon Valley Bank. For these reasons, the Debtor requests that the Court enter an order directing the Sheriff and Silicon Valley Bank to turnover the Debtor's funds under CCP § 493.040(a) and/or 11 U.S.C. § 543(b)(1).

### III.

### NOTICE

No Trustee, examiner or creditor's committee has been appointed in this Chapter 11 case. Notice of this Motion has been given to the Office of the United States Trustee (by telephone and by First Class U.S. Mail), this court, and the twenty largest unsecured

creditors. The Debtor has provided notice to Ensighten by overnight mail and by telephonic notice to their counsel of record in the Ensighten Complaint. The Debtor is also providing notice by facsimile and overnight mail to Silicon Valley Bank and the Sheriff. Because of the nature of the relief requested in this Motion, the Debtor submits that no other notice needs to be given.

## IV.
## CONCLUSION

WHEREFORE, Debtor respectfully requests that the Court enter an order directing the Sheriff and Silicon Valley Bank to turnover the Debtor's funds under 11 U.S.C. § 543(b)(1) and/or CCP § 493.040(a).

Dated: December 19, 2016

/S/ John L. Smaha
John L. Smaha
SMAHA LAW GROUP, APC.
*Proposed Attorneys for Debtor,*
Apmetrix, Inc.

W:\Apmetrix Inc\First Day Motion\106.Motion.Turnover.wpd